2022 IL App (1st) 220122

No. 1-22-0122

Opinion filed December 15, 2022

Fourth Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 11 CR 3147 |
| | ) | |
| MARCELLUS FRENCH, | ) | Honorable |
| | ) | Mary Margaret Brosnahan, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Justices Rochford and Martin concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant Marcellus French appeals from the circuit court's order denying him leave to

file a successive petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-

1 *et seq.* (West 2018)). On appeal, defendant argues that he adequately alleged both cause and

prejudice for his failure to raise his proportionate penalties claim in his initial postconviction

petition. Defendant was 20 years old in August 2010 when he committed first degree murder and

aggravated battery with a firearm. Defendant was sentenced in 2014, filed his initial postconviction

petition in 2019, and filed the motion for leave to file the successive postconviction petition at

issue in this case in 2021. Defendant's proportionate penalties claim stems from caselaw interpreting the eighth amendment to the United States Constitution as applied to juveniles and that caselaw's extension to young adult offenders via the proportionate penalties clause of the Illinois Constitution. However, our supreme court in *People v. Dorsey*, 2021 IL 123010, foreclosed defendant's claim because it could have been raised in defendant's initial petition. Therefore, we affirm the judgment of the circuit court.[1]

¶ 2                                    I. BACKGROUND

¶ 3       After a jury trial, defendant was found guilty of the first degree murder of Roger Kizer and aggravated battery with a firearm of Estavion Thompson. Codefendant Bodey Cook was also found guilty of first degree murder and aggravated battery with a firearm. The jury found that defendant personally discharged a firearm that caused death. Defendant was sentenced to consecutive terms of 55 years' imprisonment for first degree murder and 15 years' imprisonment for aggravated battery with a firearm.

¶ 4       We set forth the facts in defendant's direct appeal (*People v. French*, 2017 IL App (1st) 141815), and we recite them here to the extent necessary to our disposition. The State's evidence showed that at about 11 p.m. on August 19, 2010, the victims, Kizer and Thompson, were outside near 7450 South Kenwood Avenue in Chicago. Kizer's family lived on that block. Kizer and Thompson were either sitting on the back of a friend's parked car or standing by the car in the street. Several other people were also outside.

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

¶ 5     A vehicle passed the group multiple times. Bodey Cook was driving the vehicle. On the third pass, defendant leaned out of the passenger-side window and fired multiple shots at the group. Thompson suffered gunshot wounds to each of his legs, his chest, and his stomach. Kizer died at the scene from a gunshot wound to his chest. Defendant was 20 years old at the time of the shooting. Defendant was sentenced on May 29, 2014. Defendant, acting *pro se*, did not file a motion to reconsider his sentence.

¶ 6     On direct appeal, defendant argued that (1) the trial court abused its discretion by admitting hearsay and allowing the State to refer to it as substantive evidence during closing argument, which constituted plain error because the evidence was closely balanced, (2) trial counsel rendered ineffective assistance by failing to object to certain statements by witnesses on the basis of lack of foundation, (3) the trial court's preliminary inquiry into defendant's *pro se* posttrial claims of ineffective assistance of counsel was an adversarial proceeding and violated due process, and (4) the trial court erred when it failed to appoint new counsel and hold a hearing on defendant's claims of ineffective trial counsel. We affirmed. *Id.* ¶ 89.

¶ 7     On December 20, 2019, defendant filed his initial postconviction petition. Defendant's petition alleged that, *inter alia*, (1) appellate counsel was ineffective for failing to establish trial counsel's ineffectiveness where trial counsel failed to thoroughly investigate defendant's cellular phone records, which provided evidence concerning the location of defendant's phone during the crime, (2) trial counsel was ineffective for failing to seek the testimony of an eyewitness expert and an expert witness on cellular phone records, (3) defendant was denied a fair and impartial direct appeal proceeding where the circuit court did not include defendant's exhibits in the appellate record, (4) appellate counsel failed to present the ineffective assistance of trial counsel

claim regarding the alibi witnesses with supporting facts, and (5) trial counsel was ineffective for failing to show that police authorities offered leniency to witnesses.

¶ 8       On February 5, 2020, the trial court dismissed defendant's postconviction petition, finding that the issues raised were frivolous and patently without merit. We affirmed the dismissal of defendant's initial postconviction petition in an order pursuant to Illinois Supreme Court Rule 23(b) (eff. Jan. 1, 2021) on April 28, 2022. *People v. French*, 2022 IL App (1st) 200805-U, ¶ 68.

¶ 9       On October 13, 2021, defendant filed the motion for leave to file a successive postconviction petition at issue in this case. Defendant alleged that his 70-year sentence was a *de facto* life sentence imposed on him as a 20-year-old in violation of the proportionate penalties clause of the Illinois Constitution. As to cause, defendant stated that the sentencing claim was "not reasonably available to him before." Defendant referenced a report from Dr. James Garbarino detailing defendant's "developmental pathway from childhood to adulthood." Defendant received the report on June 11, 2021, which defendant alleged was the first point he could have reasonably brought the proportionate penalties claim. For prejudice, defendant alleged that his *de facto* life sentence was unconstitutional as applied to him under the proportionate penalties clause.

¶ 10      The trial court denied defendant's motion on December 16, 2021. The trial court concluded that defendant had waived his proportionate penalties claim by failing to raise it in either his direct appeal or initial postconviction petition. On the merits, the trial court stated that defendant's 55-year sentence for first degree murder did not "shock the moral sense of the community" because defendant was not a juvenile when he "directly participated" in the murder.

¶ 11    Defendant's notice of appeal was file-stamped January 19, 2022. The envelope accompanying the notice of appeal shows a date of January 12, 2022. This court granted defendant's motion for leave to file a late notice of appeal on June 6, 2022.

¶ 12                                  II. ANALYSIS

¶ 13    Defendant's sole argument is that he adequately alleged cause and prejudice such that the trial court erred in denying his motion for leave to file a successive postconviction petition. Defendant argues that he established cause "because his claim is based on recent, substantive developments in the law as well as newly-obtained factual support for the claim which could not have been brought in his first post-conviction petition." Defendant argues that he made a *prima facie* showing of prejudice by pleading three facts: "1) he is serving a natural or *de facto* life sentence[;] 2) scientific evidence supported his claim that his brain acted like that of a juvenile's brain at the time of the offense; and 3) the sentencing court did not adequately consider his youthful characteristics as required by *Miller* and its progeny."

¶ 14    The State responds that defendant failed to establish cause because the caselaw defendant relies on was available when he filed his initial petition in 2019. The State further points to the Illinois Supreme Court's decision in *Dorsey*, 2021 IL 123010, which the State argues forecloses defendant's cause argument. The State also notes that defendant had years to obtain a similar expert report for inclusion in his first petition. As to prejudice, the State primarily relies on the seriousness of the offense, the trial court's findings about defendant's rehabilitative prospects, the fact that all of the mitigating evidence regarding defendant's youth and upbringing was before the trial court, and that a portion of Dr. Garbarino's report is based on facts contradicted by the record.

¶ 15     The Act provides a three-stage mechanism by which a criminal defendant may assert that his conviction resulted from the substantial denial of a constitutional right. *People v. Myles*, 2020 IL App (1st) 171964, ¶ 17; *People v. Delton*, 227 Ill. 2d 247, 253 (2008). "[T]he Act contemplates the filing of only one post-conviction petition." *People v. Pitsonbarger*, 205 Ill. 2d 444, 456 (2002). "Only when fundamental fairness so requires will the strict application of this statutory bar be relaxed." *Id.* at 458.

¶ 16     "[T]he cause-and-prejudice test is the analytical tool that is to be used to determine whether fundamental fairness requires that an exception be made to section 122-3 so that a claim raised in a successive petition may be considered on its merits." *Id.* at 459. The cause-and-prejudice test has been codified in the Act. Section 122-1(f) of the Act provides: "Leave of court may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure." 725 ILCS 5/122-1(f) (West 2018). Thus, section 122-1(f) is an exception to the statutory waiver rule, "permitting a successive petition, but only if the defendant first obtains permission from the court and demonstrates to the court cause and prejudice for not having raised the alleged errors in his or her initial postconviction petition." *People v. Bailey*, 2017 IL 121450, ¶ 15.

¶ 17     "[A] prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings." 725 ILCS 5/122-1(f) (West 2018). "[A] prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." *Id.* "[T]he cause-and-prejudice test for a successive petition

involves a higher standard than the first-stage frivolous or patently without merit standard." *People v. Smith*, 2014 IL 115946, ¶ 35.

¶ 18   "[L]eave of court to file a successive postconviction petition should be denied when it is clear, from a review of the successive petition and the documentation submitted by the petitioner, that the claims alleged by the petitioner fail as a matter of law or where the successive petition with supporting documentation is insufficient to justify further proceedings." *Id.* "The denial of a defendant's motion for leave to file a successive postconviction petition is reviewed *de novo*." *Bailey*, 2017 IL 121450, ¶ 13.

¶ 19   Defendant's claim has its roots in the eighth amendment to the United States Constitution, which prohibits the infliction of "cruel and unusual punishments." U.S. Const., amend. VIII. In a line of cases the United States Supreme Court has applied the eighth amendment to juvenile offenders who have committed serious offenses. In *Roper v. Simmons*, the Court held that the eighth amendment prohibited the "imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed." *Roper v. Simmons*, 543 U.S. 551, 578 (2005). In *Graham v. Florida*, the Court held that the "Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide." *Graham v. Florida*, 560 U.S. 48, 82 (2010).

¶ 20   In *Miller v. Alabama*, the Court held that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." *Miller v. Alabama*, 567 U.S. 460, 479 (2012). The Court then determined that the *Miller* holding applied retroactively to cases on collateral review. *Montgomery v. Louisiana*, 577 U.S. 190, 212 (2016). Most recently, the Court clarified that *Miller* only required a "discretionary sentencing procedure"

and not any formal factual finding. *Jones v. Mississippi*, 593 U.S. ___, ___, 141 S. Ct. 1307, 1317 (2021).

¶ 21    The Illinois Supreme Court has also weighed in on the import of these decisions. Our supreme court in *People v. Reyes* held that *Miller* applied to *de facto* life sentences. *People v. Reyes*, 2016 IL 119271, ¶¶ 9-10 (*per curiam*). In *People v. Buffer*, our supreme court defined a *de facto* life sentence for a juvenile as a sentence of more than 40 years' imprisonment. *People v. Buffer*, 2019 IL 122327, ¶ 41. Our supreme court has also held that *Miller* applies to discretionary as well as mandatory sentences (*People v. Holman*, 2017 IL 120655, ¶¶ 40, 43-44), although the court has subsequently called that holding into question (see *Dorsey*, 2021 IL 123010, ¶ 41). With the eighth amendment backdrop established, we turn to defendant's proportionate penalties claim.

¶ 22    The proportionate penalties clause provides: "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. A penalty violates the proportionate penalties clause when it is "cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community." *People v. Miller*, 202 Ill. 2d 328, 338 (2002). The Illinois Supreme Court has twice indicated that young adult offenders may establish an unconstitutional life sentence through a postconviction petition. In *People v. Thompson*, our supreme court rejected the 19-year-old defendant's as-applied constitutional challenge because it was raised for the first time on appeal. *People v. Thompson*, 2015 IL 118151, ¶ 44. However, the court noted that the defendant was not prohibited from raising the issue through the Post-Conviction Hearing Act. *Id.*

¶ 23 In *People v. Harris*, our supreme court reversed the appellate court's decision because the "appellate court held [the] defendant's sentence violated the Illinois Constitution without a developed evidentiary record on the as-applied constitutional challenge." *People v. Harris*, 2018 IL 121932, ¶ 40. The court concluded that, because *Miller* did not apply directly to the 18-year-old defendant's circumstances, the record must be sufficiently developed to support the defendant's as-applied challenge. *Id.* ¶ 45.

¶ 24 We have described the import of *Thompson* and *Harris* as permitting "young adult offenders" to bring a postconviction claim "alleging that their sentences in excess of 40 years imposed without consideration of the *Miller* factors are unconstitutional as applied to them under the proportionate penalties clause." *People v. Horshaw*, 2021 IL App (1st) 182047, ¶ 69. Critical to success on a young adult proportionate penalties claim is a factual showing that "the science concerning juvenile maturity and brain development applies equally" to a young adult's case. See *People v. House*, 2021 IL 125124, ¶ 29. With the overarching law between the Illinois proportionate penalties clause and the eighth amendment to the United States Constitution laid out, we can analyze whether defendant has satisfied the cause and prejudice test under section 122-1(f).

¶ 25 As discussed above, a defendant establishes cause by " 'identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings.' " *Bailey*, 2017 IL 121450, ¶ 14. Defendant relies on the evolving caselaw and scientific research regarding young adult offenders, which in turn led defendant to seek the report from Dr. Garbarino to substantiate his claim. However, in *Dorsey*, 2021 IL 123010, ¶ 74, our supreme court held that "*Miller*'s announcement of a new substantive rule under the eighth

amendment does not provide cause for a defendant to raise a claim under the proportionate penalties clause." The court continued that "*Miller*'s unavailability prior to 2012 at best deprived defendant of 'some helpful support' for his state constitutional law claim, which is insufficient to establish 'cause.' " *Id.* (quoting *People v. LaPointe*, 2018 IL App (2d) 160903, ¶ 59). Based on *Dorsey*'s clear holding, defendant cannot establish cause for his failure to raise his proportionate penalties claim in his initial postconviction petition.

¶ 26    To be sure, this court has on occasion concluded that a defendant has established cause based on the evolution of the case law in the juvenile sentencing arena. However, as we recognized in *People v. Walsh*, it appears that, when the court has done so, it has largely been based on the State's concession of the issue. *People v. Walsh*, 2022 IL App (1st) 210786, ¶ 32; see *Horshaw*, 2021 IL App (1st) 182047, ¶ 122 (noting that the State did not dispute that the defendant had established cause "based on the retroactive application of *Miller* to cases on collateral review"); *People v. Meneses*, 2022 IL App (1st) 191247-B, ¶ 17 ("The State concedes that defendant has established the first prong."); *People v. Green*, 2022 IL App (1st) 200749, ¶ 27 (noting that the State conceded that cause had been established "because the evolving case law involving the sentencing of youthful offenders was not available" when the defendant filed his prior petitions).

¶ 27    We further explained in *Walsh* that when cause has been fully litigated, as it was here, this court has universally applied the holding in *Dorsey* to conclude that cause has not been established based on the prior unavailability of *Miller* and its progeny. *Walsh*, 2022 IL App (1st) 210786, ¶ 33; see *People v. Figueroa*, 2022 IL App (1st) 172390-B, ¶¶ 36, 39. In *Figueroa*, this court began by noting that the State had "maintained from the outset" that the defendant had failed to satisfy the cause prong for filing a successive petition because he had not brought the claim in an earlier

petition. *Id.* ¶ 36. This court then concluded that *Dorsey* was "entirely dispositive," based on the above-quoted language, and that the defendant had not established cause for his failure to raise his proportionate penalties claim in an earlier proceeding. *Id.* ¶ 39; see also *People v. Ruddock*, 2022 IL App (1st) 173023, ¶ 72 ("The supreme court's reasoning in *Dorsey* also establishes that the defendant in this case cannot satisfy the cause prong of the cause-and-prejudice test for bringing a successive postconviction petition with respect to his proportionate penalties claim under the Illinois Constitution."); *People v. Hemphill*, 2022 IL App (1st) 201112, ¶ 31 ("It follows that, based on the supreme court's reasoning in *Dorsey*, defendant in this case cannot satisfy the cause prong of the cause-and-prejudice test for bringing a successive postconviction petition with respect to his proportionate penalties claim under the Illinois Constitution.").

¶ 28 In the months following our decision in *Walsh*, this trend has held true. See *People v. Wimberly*, 2022 IL App (1st) 211464, ¶ 9 ("In light of the court's pronouncement in *Dorsey*, the defendant's reliance on *Miller* and related developments in juvenile-sentencing case law as the reason for his failure to bring his proportionate-penalties-clause claim in his initial petition is insufficient to establish cause."); *People v. Jones*, 2022 IL App (1st) 200569-U, ¶ 43 ("Following *Dorsey*, in nearly every appellate court district, we have consistently rejected successive postconviction petitions for lack of cause where the young adult defendant's claim is based on the proportionate penalties clause."). Unless our supreme court reconsiders its decision in *Dorsey*, we are bound by the court's determination that *Miller* and its progeny do not provide a petitioner with cause for failing to raise a proportionate penalties claim in an initial postconviction petition. See *People v. Artis*, 232 Ill. 2d 156, 164 (2009).

¶ 29    Defendant attempts to distinguish *Dorsey* on a couple of levels. Defendant argues that, because the defendant in *Dorsey* was a minor, the holding should not apply to the class of young adult offenders. Defendant continues that *Dorsey*'s holding on lack of cause was "well-founded with respect to juveniles" but that it was not until 2015 in *Thompson* that our supreme court suggested the possibility of an "emerging adult" *Miller* claim. We disagree for a few reasons. First, *Dorsey*'s holding was not so narrow. The court held that "*Miller*'s announcement of a new substantive rule under the eighth amendment does not provide cause for *a defendant* to raise a claim under the proportionate penalties clause." (Emphasis added.) *Dorsey*, 2021 IL 123010, ¶ 74. As we recently explained, "[i]f *Miller*'s announcement of a new substantive rule does not provide a minor cause to bring a successive petition, it follows that our supreme court's recent acceptance that *Miller* may apply to young adults in certain circumstances does not provide cause for a young adult's successive petition either." *People v. Walker*, 2022 IL App (1st) 201151, ¶ 29.

¶ 30    Second, the primary case cited by our supreme court, *LaPointe*, 2018 IL App (2d) 160903, ¶ 59, held that the 18-year-old defendant had not established cause because *Miller*'s nonexistence did not prevent the defendant from earlier raising a proportionate penalties clause claim. The *Dorsey* court at least implicitly recognized that its decision applied equally to minors and young adults. And courts in Illinois have historically recognized that there is a "significant developmental difference not only between minors and adults but also between young adults and older adults." *People v. Haines*, 2021 IL App (4th) 190612, ¶ 51. Our supreme court over 100 years ago in discussing minors, defined as those between 16 and 21 years of age, stated: "There is in the law of nature, as well as in the law that governs society, a marked distinction between persons of mature age and those who are minors"; "[t]he habits and characters of the latter are, presumably, to a large

extent as yet unformed and unsettled." *People ex rel. Bradley v. Illinois State Reformatory*, 148 Ill. 413, 423 (1894). This court has on multiple occasions reduced a 20-year-old defendant's sentence after a conviction of first degree murder. See *People v. Mitchell*, 12 Ill. App. 3d 960, 968 (1973); *People v. Maldonado*, 240 Ill. App. 3d 470, 484-85 (1992).

¶ 31    Thus, while the more recent caselaw certainly adds to defendant's argument, his proportionate penalties claim was "buildable" prior to *Miller*. *Haines*, 2021 IL App (4th) 190612, ¶ 56. As our supreme court has held, "the lack of precedent for a position differs from 'cause' for failing to raise an issue, and a defendant must raise the issue, even when the law is against him, in order to preserve it for review." *People v. Guerrero*, 2012 IL 112020, ¶ 20. We cannot, as defendant requests, distinguish *Dorsey* for the reasons he urges.

¶ 32    Defendant also comments that the *Dorsey* court's cause analysis constituted *obiter dicta*. We disagree. Our supreme court found the lack of cause to be a sufficient basis, aside from forfeiture, to uphold the trial court's denial of the defendant's motion for leave to file a successive postconviction petition. See *Woods v. Interstate Realty Co.*, 337 U.S. 535, 537 (1949) (explaining that "where a decision rests on two or more grounds, none can be relegated to the category of *obiter dictum*"). Whether cause had been established to warrant allowing the defendant in *Dorsey* to file a successive postconviction petition was a point " 'argued by counsel *and deliberately passed upon by the court*.' " (Emphasis in original.) *Exelon Corp. v. Department of Revenue*, 234 Ill. 2d 266, 277 (2009). That makes the court's cause analysis, at minimum, judicial *dicta*, which has "the force of a determination by a reviewing court and should receive dispositive weight in an inferior court." *People v. Williams*, 204 Ill. 2d 191, 206 (2003). And even if *obiter dicta*, we are bound to follow the court's cause holding. *Id.* at 207 (explaining that regardless of whether the

*dicta* was judicial or *obiter*, it "should have guided the appellate court"). Thus, classifying the court's analysis as *dicta* does not alter the binding effect it has on this court.

¶ 33    Defendant's final argument on the cause front is that he was not impeded solely by the lack of supporting caselaw but also by the lack of evidentiary support. In other words, defendant argues that, although much of the caselaw he relies on existed when he filed his initial petition in 2019, he did not obtain Dr. Garbarino's report until June 2021. Defendant's argument fails. Based on our supreme court's decision in *Dorsey*, defendant's proportionate penalties claim was buildable even prior to the *Miller* decision in 2012. *Thompson*, which came out the year after defendant was sentenced and over four years before defendant filed his initial petition, expressly opened the door to defendant's current claim. Defendant had ample time to summon the evidentiary support to raise his proportionate penalties claim. This is not a situation, like the cases cited by defendant, where cause was established because newly discovered evidence surfaced that the defendants had no control over. See *People v. Weathers*, 2015 IL App (1st) 133264, ¶ 36 (concluding that the defendant established cause where an Illinois Torture Inquiry and Relief Commission report was issued after defendant's initial postconviction petition was resolved); *People v. Wrice*, 2012 IL 111860, ¶¶ 41, 49 (accepting the State's concession that cause had been established where the defendant relied on a government report that was released after he filed his initial postconviction petition). Similar to the analysis above, if the caselaw underpinning defendant's claim does not provide cause, then defendant's delayed investigation of the claim based on the lack of the caselaw cannot provide cause either.

¶ 34    *Dorsey*'s holding that "*Miller*'s announcement of a new substantive rule under the eighth amendment does not provide cause for a defendant to raise a claim under the proportionate

penalties clause" is dispositive in this case. Defendant has not established cause because the Illinois proportionate penalties clause existed long before he filed his initial postconviction petition and, thus, he could have raised the claim at that time. His failure to do so prohibits his current claim from proceeding. The trial court properly denied defendant's motion for leave to file his successive petition.

¶ 35                                    III. CONCLUSION

¶ 36     For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 37     Affirmed.

---

***People v. French***, **2022 IL App (1st) 220122**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 11-CR-3147; the Hon. Mary Margaret Brosnahan, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Jessica D. Ware, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Brian K. Hodes, and David H. Iskowich, Assistant State's Attorneys, of counsel), for the People. |